Opinion of the court, by
Judge Hitchcock.
In the present case, the court are called upon to give a further construction to the judgment and execution law of 1824. In the case of McCormick v. Alexander, ante, 65, delivered at the last term, it was determined that, under that law, judgment creditors, who had not sued out and levied execution within one year from the date of the judgment, lose their lien and preference, as against subsequent judgment creditors, who had sued out and levied execution within the year; and this as well in cases of judgment before the enactment of the law as after it.
It has been suggested that such construction might be given to the fourth section of that act as would induce the *court to doubt the correctness of this decision. That section of the law was carefully examined before that case was decided; it has been since, with equal care, re-examined, and we discover nothing in it which can, in the least, tend to change the opinion then expressed. Although a court may, and undoubtedly sometimes do, in the examination of a statute, find some things which are not consistent with their ideas of policy or of justice, yet it would be highly improper to distort the language, or the evident meaning, in such manner as to give the statute a construction consistent with their own feelings, when such construction would manifestly defeat the intention of the legislature. The judgment and execution law of 1824 contains a system which is as well adapted, perhaps, for the State of Ohio, as any other which could be formed on the same subject. So far as it respects judgments, which shall be subsequently rendered, no one, it is believed, can, with propriety complain. If there is any complaint, it must be on the ground, that the statute extends to judgments which wore rendered before its enactment. If this be an evil, it will soon be past. And to give a construction to any part of the statute which would destroy the harmony of the whole, in order to remedy this particular evil, *371 would be followed by consequences, the injurious effects of which can not be easily foreseen.
Section 4 above referred to, provides, “ that when two or more writs of execution, against the same debtor, shall be sued out during the term in which judgment is rendered, or within ten days thereafter; and when two or more writs of execution against the-same debtor shall be delivered to the officer on the same day, no preference shall be given to either of such writs, but if a sufficient sum of money -is not made to satisfy all executions, the amount made shall be distributed to the several creditors, in proportion to the amount of their respective demands; in all other cases, the writ of execution first delivered to the officer shall be first satisfied; and it shall be the duty of the officer to indorse on every writ of execution the time when he received >the same.” Provisions, similar in substance, have been contained in every law on the same subject for many years. '
*In order to give a proper construction to this section, we must, as in every other case, look through the whole statute, and, if possible, so construe it, that the whole may have effect, and that one part shall not defeat another. We must bear in mind, that the legislature in acting upon this subject are not legislating for a particular case. They are determining the rights of different judgment creditors, and also the rights of the judgment creditor and debtor. It is for these persons they are legislating, and as to others, they go no further than an attempt to provide, that in the contest between these their rights shall not be violated. Neither is the legislation confined-to any particular species of property. Property in possession, whethér real or personal, is taken into view.
By section 1 of the act it is enacted, “that lands, tenements, goods, and chattels shall be subject to the payment of debts, and shall be liable to be taker), in execution,” etc. Section 2 provides, “ that the lands and tenements of the debtor shall be bound for the satisfaction of any judgment against such debtor, from the first day of the term at which judgment shall be rendered,” etc. It is this section which gives the creditor a lien upon the lands of the debtor, in consequence of the recovery of judgment, but it extends only to the lands situated in the county where the judgment is rendered. Por the same section provides that where the lands are situate in a different county, such lands, as well as the goods and chattels of the debtor, shall be bound from the time they are seized in execution.
*372 The lien which is thus created, is by subsequent provisions of the-statute regulated as to other bona'fide judgment creditors; as to all the rest of the world it appears to be perpetual.- By section 9 provision is made that if an execution be levied upon the lands of the debtor, and it shall appea,r by the inquisition required by the statute, that the lands thus levied upon, at two-thirds their appraised value, are sufficient to satisfy the execution with all costs, the judgment upon which such execution issued “ shall not operate as a lien upon the residue of the debtor's estate to the prejudice of any other bona fide judgment creditor. Section 17 determines the character, or continuance of this lien. ^Without repeating this section, it is sufficient to say, that by its provisions the lien is to continue one year, and fora greater length of time provided an execution be sued out and levied within that period. But if an execution is not levied within the year, the judgment shall not operate as a lien to the prejudice of “ any other bona fide judgment creditor."
Taking these parts of the statute together, it is apparent that a judgment operates as a lien upon the lands and tenements of the debtoi’, and that this lien is secured to the creditor for the term of one year. Within that time no individual can deprive him of it.. But if not enforced within that period, it is inoperative so far as respects a mere diligent creditor.
If, in giving a construction to section 4 of the statute, we were to pay no attention to the priority of judgments, upon which executions were issued; if we were not to regard the description of property upon which such executions were levied, but were to determine that unless the executions were issued within ten days after the term in which judgment was rendered, or unless the executions were delivered to the officer on the same day, the one first delivered should be first satisfied, all that is said in the statute upon the subject of judgments, operating as liens upon the lands and .tenements of the debtor, would be rendered nugatory. Lands and tenementSj as well as goods and chattels, as to any beneficial effect, would be-only bound from the time they were seized in execution. Such could not have been the intention of the legislature.
What construction, then, can this section receive, which will give it full effect, and, at the same time, not interfere with the other parts of the law. It appears to me that the intention of the legislature is easily ascertained. In this section, they intended to provide for cases where there were two or more judgment creditors,. *373 having equal rights, and where there is no priority of lien, as when the judgments are recovered in the same term; for cases where the judgment does not operate as a lien, but the property is bound only -from the time when seized in execution, as goods and chattels, or lands not situate in the county where the ^judgment is recovered ; for cases where the creditor, in consequence of not having •an execution levied within one year from the date of his judgment, has lost the benefit of his lien so far that it “ shall not operate to the prejudice of any other bona fide judgment creditors." If this section is •construed to extend to these different classes of cases, it will be found to be beneficial; if extended further, it will defeat some of the essential provisions of the statute.
The case before the court differs only in one particular from the case of McCormick v. Alexander. In that case no execution issued upon the judgment of Evans, one of the creditors, within twelve months from the date of his judgment. In this case, Patton caused execution to be issued and levied upon part of the property which was eventually sold, within twelve months from the first day of the term in which his judgment was recovered. At the July term of the court of common pleas, 1822, however, this levy and the appraisement made in pursuance of it, was, on motion of the plaintiff, .set aside.
It remains, then, to consider the effect of setting aside a levy. It would seem that upon this subject there could be but one opinion. If the levy is set aside, as to all subsequent proceedings, the course to be pursued must be the same as if no levy had been made. Before the property can be sold, it must be again seized in execution. Had theft, fa. been levied upon goods and chattels, so .soon as the levy was set aside, the goods and chattels must have been restored to the debtor. Patton, while he abided by his first levy, was safe, but having elected to pursue a different course, if that course operates to his injury, he must abide the consequences.
The first levy of an execution issued upon the plaintiff’s judgment, which can be noticed by the court, is the one which was made on February 22, 1823. This was more than one year after the date of the judgment. It follows, that according to the principle settled in the case of McCormick v. Alexander, he lost his lien so far, that the same could not operate to the prejudice of other bona fide judgment creditors, whose executions had been levied within twelve months after the date of their respective *374 judgments. This being *the opinion of the court, and it appearing that the money made will not be more than sufficient to satisfy judgments which must be preferred to that of the plaintiff, according to the terms of the agreed state of facts, judgment must, in the present case,' be entered for the defendant.†

NoTE bx the Editob. — There will be found in x. Ohio, 74, a most admirable summary of the legislation and judicial decisions in Ohio, relating to thft law of liens [note “ a See also note to McCormick v. Alexander, ii. 65. The act of 1831, now in force, Swan’s Stat. 479, sec. 23, is a re-enactment of the statute of 1824, on which this decision is based. See also note “b,” on that page. -
When mortgaged land is levied on, levy may be set aside and other lands taken, xi. 444; but not unnecessarily, ib.